UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EMANUELA MCKINNEY,

    *Plaintiff,*

v.

STEWARD ST. ELIZABETH'S MEDICAL CENTER
OF BOSTON, INC. *doing business as*
St. Elizabeth's Medical Center;
RALPH DE LA TORRE, MD; and
CHRISTOPHER DUNLEAVEY,

    *Defendants.*

No. 23-cv-12115-GAO

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO STATE COURT

LEVENSON, U.S.M.J.

### INTRODUCTION

Plaintiff Emanuela McKinney brought this action in Suffolk Superior Court seeking unpaid wages and statutory damages under the Massachusetts Wage Act, M.G.L. c. 149, § 148 (the "Wage Act"). *See* Docket No. 1. Defendants—her former employer and two corporate officers[1]—timely removed the action to this Court pursuant to 28 U.S.C. § 1446, on the stated ground that Plaintiff's employment had been governed by a collective bargaining agreement (the "CBA"), which created a basis for subject-matter jurisdiction in federal court under § 301 of the Labor Management Relations Act ("LMRA"). *See* Docket No. 1. *See generally* 29 U.S.C. § 185 (containing § 301 of the LRMA).

Currently before the Court is Plaintiff's motion to remand this matter to state court.

---

[1] Defendants Ralph de la Torre and Christopher Dunleavy were, respectively, the employer's CEO and CFO during the relevant period. *See* Docket No. 10 ¶¶ 3–4.

Plaintiff moved for remand on October 13, 2023. *See* Docket Nos. 8, 9 (motion to remand and memorandum in support). Defendants filed their opposition on October 27, 2023. Docket No. 11. That motion has now been referred to me.[2] I held a hearing on the motion at which counsel for both parties offered helpful (albeit diametrically opposite) guidance.

Following the hearing, I invited subsequent briefing, which the parties provided on January 3, 2024. *See* Docket Nos. 19, 20, 21. After considering all of the parties' submissions, I order that the matter be remanded to state court for the reasons set forth below.

I.   **Factual and Procedural History**

Plaintiff resigned from her position at Steward St. Elizabeth's Medical Center of Boston ("Steward") effective July 29, 2022. *See* Docket No. 5 ¶¶ 10–15. At the time of her resignation, Plaintiff was part of a represented bargaining unit and subject to the CBA. Docket No. 1 ¶ 26. The final payroll period during which Plaintiff worked for Steward ended on July 30, 2022, and, on August 4, 2022, Steward mailed Plaintiff a regular paycheck for her time worked during that payroll period. Docket No. 5 ¶¶ 16, 18–20. On August 18, 2022, Steward mailed Plaintiff a second check compensating her for accrued and unused vacation time/paid time off ("PTO"). *Id.* ¶ 21. That check compensated her for most—but not all—of her PTO; it shortchanged her by 13.85 hours of PTO pay, as compared to the earned PTO reflected on the paystub that had accompanied her final regular paycheck. *Id.* ¶¶ 19–23.

---

[2] Although the First Circuit has not addressed the question, I follow other district and magistrate judges in this circuit and assume that a motion for remand is a non-dispositive motion for purposes of 28 U.S.C. § 636(b)(1) and Rule 72(a) of the Federal Rules of Civil Procedure. A magistrate judge may determine such a motion by final order. *See Stefanik v. City of Holyoke*, 597 F. Supp. 2d 184, 185 (D. Mass. 2009) (collecting cases on the question); *Unauthorized Prac. of L. Comm. v. Gordon*, 979 F.2d 11, 13 (1st Cir. 1992) (declining to decide the question); *see also Delta Dental v. Blue Cross & Blue Shield*, 942 F. Supp. 740, 743–46 (D.R.I. 1996) (considering the question at length and holding that a motion to remand is non-dispositive).

Plaintiff sued on August 15, 2023, and Defendants removed to this Court on September 15, 2023. *See* Docket No. 1. Plaintiff filed an amended complaint in this Court and Defendants have answered that amended complaint. *See* Docket No. 5 (amended complaint); Docket No. 10 (answer[3]).

## II.     Relevant Doctrines

### A.     *The Well-Pleaded Complaint Rule*

The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted). As a corollary to the well-pleaded complaint rule, the removal statute does not permit a defendant faced with a claim grounded exclusively in state law to create federal question jurisdiction and remove to federal court on the sole basis that the defendant has raised a federal defense. *Id.* at 392–93. In short, the general rule is that removal is proper only for a complaint that alleges a federal cause of action on its face.

### B.     *"Complete Preemption" under Section 301*

The complete preemption doctrine is "an 'independent corollary' to the well-pleaded complaint rule." *Id.* at 393. The doctrine provides that, for certain federal statutes, their "pre-emptive force . . . is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule,'" thus allowing removal to federal court. *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).

---

[3] Eleven days after filing their initial answer, Defendants filed an amended answer. *See* Docket No. 12.

Complete preemption doctrine is applicable when Congress has "has clearly manifested an intent" to make a particular cause of action removable to federal court. *Metro. Life Ins. Co.*, 481 U.S. at 66. When Congress chooses to completely preempt an area of state law, then "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim," and is therefore removable, even though the complaint may, facially, raise only state law claims. *Caterpillar*, 482 U.S. at 393; *see Metro. Life Ins. Co.*, 481 U.S. at 63–64 ("One corollary of the well-pleaded complaint rule developed in the case law . . . is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.").

The complete preemption doctrine commonly applies to claims that arise from collective bargaining agreements, which are subject to the LMRA, and § 301 in particular. *See Caterpillar*, 482 U.S. at 393 ("The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by § 301 of the LMRA."). The Supreme Court has held that, under § 301, "any state cause of action 'for violation of contracts between an employer and a labor organization' . . . is purely a creature of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983) (footnote omitted) (quoting *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 376 F.2d 337, 339 n.1 (6th Cir. 1967), *aff'd*, 390 U.S. 557 (1968)). The Court subsequently elaborated on the point, ruling in *Caterpillar* that complete preemption under § 301 applies to any state law claim that is either "'founded directly on rights created by collective-bargaining agreements' or 'substantially dependent on analysis of a collective-bargaining agreement.'" *Rueli v. Baystate Health, Inc.*, 835 F.3d 53, 58 (1st Cir. 2016) (quoting *Caterpillar*, 482 U.S. at 394).

Thus, in considering whether a particular claim is subject to removal to federal court, courts must look beyond the wording of the complaint (which might not directly reference a CBA) and must consider whether the rights at issue are created by a CBA or are dependent upon the analysis of a CBA.

### III. Arguments of the Parties

#### A. *Defendants' Initial Arguments*

Defendants initially based their removal on a contention that Plaintiff's claim depends on her rights under the CBA, such that the LMRA preempts her state-law cause of action (*i.e.*, transforms it into a federal cause of action that is subject to removal to federal court). The heart of Defendant's contention is the principle that § 301 of the LMRA "completely preempts any state-law cause of action 'founded directly on rights created by collective-bargaining agreements' or 'substantially dependent on analysis of a collective-bargaining agreement.'" Docket No. 1 ¶ 8 (quoting *Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 60 (1st Cir. 2021) (itself quoting *Caterpillar*, 482 U.S. at 394)). Defendants argued that "resolution of Ms. McKinney's Wage Act claim 'plausibly requires interpretation of one or more provisions of the CBA', and therefore, 'it comes within the LMRA's preemptive sweep.'"[4] *Id.* ¶ 32 (quoting *Rose*, 1 F.4th at 61).

Subsequent briefing and argument has made clear that, at the time of removal, Defendants anticipated disputing whether, under the terms of the CBA, Plaintiff was actually owed additional money for PTO. *See* Docket No. 11, at 2 n.1. After further investigation and discussions between counsel, however, Defendants now acknowledge that there was a simple

---

[4] As noted below, this is still Defendants' position, although the underlying factual premises for their position have changed.

5

clerical error, which caused Plaintiff to be paid less PTO than she had earned. Accordingly, at this time, Steward "does not rely [in its opposition to remand] on the existence of a dispute over the amount of PTO accrued by Ms. McKinney to support § 301 preemption." *Id.*

### B.   *Plaintiff's Initial Arguments*

In her motion for remand, Plaintiff argues that § 301 preemption is triggered only when "'resolution of [the] state-law claim is *substantially dependent* upon analysis of the terms of' the CBA." Docket No. 9 at 2–3 (alteration and emphasis in original) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)). Plaintiff notes that a claim *depends* on analysis of a CBA only when either (A) the claim alleges a breach of the CBA or (B) the claim "arguably hinges upon an interpretation of the CBA." *Id.* at 3 (emphasis omitted) (quoting *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 8 (1st Cir. 2012)). Plaintiff argues (A) that she does not allege a breach of the CBA and (B) that no interpretation of the CBA is required to adjudicate her claim. *Id.* at 3–5.

### C.   *Defendant's Arguments in Opposition*

In their opposition to the motion to remand, Defendants argue that, although Plaintiff's claim arises under the Wage Act, it is based on her contractual entitlement to PTO under the CBA, and, therefore, the claim is preempted as a "state-law cause of action 'founded directly on rights created by [a CBA].'" Docket No. 11, at 1 (quoting *Rose*, 1 F.4th at 60 (itself quoting *Caterpillar*, 482 U.S. at 394)). Defendants support this contention by arguing that PTO, unlike a wage, is not required under Massachusetts law, so Plaintiff's entitlement to PTO derives solely from the CBA. *Id.* at 6.

Defendants also note that the CBA contains a mandatory grievance and arbitration procedure. *Id.* at 7–9. They argue that remanding this matter would improperly "allow [Plaintiff] to proceed in state court with claims directly derived from the CBA 'without first exhausting the

6

grievance procedures established in the bargaining agreement.'" *Id.* at 2 (quoting *Allis-Chalmers Corp.*, 471 U.S. at 219). Defendants have not, however, requested that the Court compel arbitration.[5]

### D. Briefing Following the Motion Hearing

At the motion hearing, the parties expanded upon the arguments in their briefs. The parties confirmed that, as mentioned in Defendants' briefing, the amount of PTO due to Plaintiff is no longer in dispute.[6] Defendants also elaborated on their contention that the parties' dispute may be subject to the CBA's provisions for grievance resolution and arbitration, and that this circumstance warrants § 301 preemption. Defendants contend that Plaintiff failed to timely avail herself of the CBA's grievance and arbitration procedure, and they note that some interpretation of the CBA (or, at least, its grievance resolution procedures) will likely be required to determine whether Plaintiff can proceed with her claim in any forum.

Following the hearing, I invited the parties to provide further briefing on two related questions:

> 1. Does Defendant's contention that Plaintiff failed timely to avail herself of the CBA's grievance resolution procedures bring this case within the LMRA's preemptive sweep? *Cf.* [*Rose*, 1 F.4th at 61] ("If a claim plausibly requires interpretation of one or more provisions of a CBA, it comes within the LMRA's preemptive sweep.").
>
> 2. Under the well-pleaded-complaint rule, does it matter that Defendant's invocation of the CBA's grievance resolution procedures arises only as a defense, and not as a component of Plaintiff's claims?

---

[5] Based on the representations of counsel, it appears that Defendants may argue that Plaintiff failed to exhaust preliminary steps in the grievance procedures and thus is not entitled to proceed to arbitration (*i.e.*, that Plaintiff has forfeited her claim).

[6] As a practical matter, the monetary stakes in this litigation arise from the statutory damages and attorneys' fees provisions of the Massachusetts Wage Act, which may significantly exceed the amount of PTO that was initially at issue. *See* M.G.L. c. 149, § 150.

Docket No. 19 (electronic order for supplemental briefing).

### 1.   *Plaintiff's Supplemental Briefing*

In her supplemental brief, Plaintiff cites the Supreme Court's decision in *Caterpillar* for the proposition that, under the well-pleaded complaint rule, this case is not subject to preemption, even though there may be potentially dispositive questions about whether Plaintiff was required to exhaust the CBA's grievance procedure. Plaintiff's position is that raising a federal question as part of a *defense* does not create a basis for federal question jurisdiction and does not support preemption when a basis for federal question jurisdiction is not apparent on the face of the complaint. *See* Docket No. 20, at 2–4; *see also Caterpillar*, 482 U.S. at 398.

Plaintiff further contends that her claim requires, at most, mere consultation—not interpretation—of the CBA, and thus is not preempted by § 301. *See* Docket No. 20, at 4 (citing *Rose*, 1 F.4th at 61). Plaintiff also argues that the CBA's grievance and arbitration procedure is inapplicable by its own terms, in that it "pertains only to 'controvers[ies] *concerning the meaning or application of any provision* of' the CBA." *Id.* at 6 (alteration in original) (emphasis added by Plaintiff) (quoting the CBA). Because there is no dispute about the amount of money that Defendants owed to Plaintiff for PTO at the time of her resignation, Plaintiff contends, this case does not require interpretation of the meaning of the CBA.

### 2.   *Defendants' Supplemental Briefing*

In their supplemental brief, Defendants reassert their previous arguments and also advance an argument that they alluded to previously, namely that the CBA's grievance procedure effectively bars Plaintiff's claim. Defendants contend that the dispute about the applicability of the CBA grievance procedure means that Plaintiff's claim should be deemed to be "substantially dependent on analysis of a collective bargaining agreement," and thus preempted under § 301. *See* Docket No. 21, at 2–3 (quoting *Rose*, 1 F.4th at 60). Defendants note that they "are not

aware of any reason not to apply [this] prong of the complete preemption test [that the First Circuit] set forth in *Rose* to the facts regarding the CBA's grievance resolution procedures and plaintiff's failure to avail herself of the procedures." *Id.* at 3.

As to the applicability of the well-pleaded complaint rule, Defendants assert, with citation to *Rose*, that "[a] defendant removing a case to federal court by virtue of complete preemption, is not required to satisfy the well-pleaded complaint rule." *Id.* at 6; *see Rose*, 1 F.4th 56, 59–60.

## IV.     Analysis

I note at the outset that Defendants bear the burden of demonstrating that the Court has federal question jurisdiction if they are to avoid remand. *Rose*, 1 F.4th at 61 ("When the removal of a case to a federal court is challenged, the removing party normally 'bears the burden of persuasion vis-à-vis the existence of federal jurisdiction.'" (quoting *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*, 132 F.3d 824, 831 (1st Cir. 1997))).

Here, the face of the complaint raises no federal question, so the well-pleaded complaint rule would typically preclude federal question jurisdiction and would require remand. In this case, however, there is a CBA whose procedural provisions may—at least in Defendants' view— bar Plaintiff's claims. Accordingly, a somewhat deeper analysis is required to consider whether the potential application of these CBA provisions implicates § 301 and invokes the complete preemption doctrine.

To show that the complete preemption doctrine applies, and thus to avoid remand to state court, Defendants must show either that Plaintiff's claim is "founded directly on rights created" by the CBA or that the claim is "substantially dependent on analysis" of the CBA. *See Caterpillar*, 482 U.S. at 394.

### A.     Plaintiff's Claim Is Not Founded Directly on Rights Created by the CBA

Defendants argue that, because Plaintiff's Wage Act claim is a claim for money to which she was contractually entitled under the CBA, the claim is "founded directly on rights created by the [CBA]," and is therefore removable. Docket No. 11, at 1. This argument, however, stretches § 301's complete preemption doctrine well beyond its recognized margins.

As the First Circuit has noted, under existing Supreme Court precedent, § 301 preemption does not apply when "no dispute exist[s] about the amount of wages owed—only whether, contrary to state law, they had been paid too late." *Cavallaro*, 678 F.3d at 7 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124–25 (1994)). If, however, as in *Cavallaro*, determining the kind or amount of wages that are owed will depend upon interpretation and application of the CBA, then preemption applies, because such a claim is "substantially dependent on analysis" of the CBA. *See id.* 678 F.3d at 7–8; *Caterpillar*, 482 U.S. at 394.

This is not the first time a Wage Act claim has been removed to federal court, only to find that there is no dispute about the amount of wages owed. Indeed, the First Circuit addressed just such a situation in *Lawless v. Steward Health Care System, LLC*, 894 F.3d 9 (1st Cir. 2018). In that case, the First Circuit noted, once it became clear that the plaintiff's claim was only for penalties under the Massachusetts Wage Act (and thus was not a dispute about the amount of wages owed under a CBA), "any prospect for preemption vanished." *Id.* at 19.

Defendants' argument offers a slight twist; they contend that PTO, unlike a wage, is not required under Massachusetts law. On this basis, they argue, Plaintiff's entitlement to PTO could be said to derive from the CBA even if her entitlement to wages does not. *See* Docket No. 11, at 6. This purported distinction between wages and PTO does not, however, meaningfully advance Defendants' position. In the first place, the entitlement to wages is not purely a matter of state law. On the contrary, as Defendants themselves acknowledge, no wage greater than the state

10

minimum wage is typically required by Massachusetts law. *See id.* In unionized settings, wage rates are ordinarily set by a CBA.

It is true that Plaintiff's initial entitlement to both PTO and to hourly pay above minimum wage is born of the governing employment agreement, *i.e.*, the CBA. But, once Plaintiff earned her hourly pay and PTO, her entitlement to prompt payment of the amounts she was owed (collectively her "wages" under the Wage Act) rests upon the Wage Act. *See* M.G.L. c. 149, § 148 ("The word 'wages' shall include any holiday or vacation payments due an employee under an oral or written agreement."). So too, Plaintiff's statutory entitlement to monetary penalties against those who fail to timely pay her wages is purely a creature of the Wage Act. *See* M.G.L. c. 149, § 150.

In sum, once earned, PTO and hourly pay are both "wages" that an employer is obligated to timely pay under the Wage Act. The amounts of the wages and PTO may have been set, in the first instance, by a CBA, but an employer's obligation to pay those wages becomes an obligation of statute, not merely of contract, once the wages are due. Defendants' distinction between PTO and wages is, in this case, a distinction without a difference.

### B.  *Plaintiff's Claim Does Not Require Analysis of the CBA*

Defendants also argue that Plaintiff's claim requires analysis of the CBA and is therefore preempted. Broadly, Defendants offer two justifications for this claim: first, they contend that determining Plaintiff's entitlement to PTO would require interpretation of the CBA and, second, they contend that determining whether the CBA requires arbitration of Plaintiff's claim will require interpretation of the CBA. Neither rationale supports preemption in this case.

       *1.*     *There Is No Need to Interpret the CBA Regarding Plaintiff's Entitlement to PTO*

Initially, Defendants argued that determining whether Plaintiff is owed PTO—and, if so, how much—would require interpretation of the CBA. *See* Docket No. 1 ¶ 32. On its face, such a claim resembled the kind of dispute that supported preemption in *Cavallaro*. But Defendants have now conceded that there is no longer any dispute as to the amount of PTO that Plaintiff was owed upon her resignation. *See* Docket No. 11, at 2 n.1. As such, no interpretation of the CBA is required.[7]

This is true even though the amount owed was surely calculated based on the CBA's provisions. A mere occasion for "consultation" of a CBA, short of "actual interpretation" will not trigger preemption. As the First Circuit has noted:

> LMRA complete preemption has its limits. "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by [§] 301." [*Allis-Chalmers Corp.*, 471 U.S. at 211]. It follows that section 301 does not "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212, 105 S.Ct. 1904. In the last analysis, state-law claims that require "only consultation with the CBA," as opposed to "actual interpretation" of the CBA, "should not be extinguished." *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 12 (1st Cir. 2001); *see Cavallaro*, 678 F.3d at 7.

*Lawless*, 894 F.3d at 18 (first alteration in original).

---

[7] In *Lawless*, the First Circuit addressed a thorny jurisdictional question in a Wage Act case where removal was initially permitted because "it was plausible at the time of removal that the district court would be required to interpret the CBA in order to determine what amounts, if any, were owed as lost wages." 894 F.3d at 19. The court concluded that the doctrine of supplemental jurisdiction permitted the district court to adjudicate the Wage Act claims to conclusion, even after it emerged in the course of discovery that there was no live dispute about the amount of wages initially owed and so the federal claim had gone "up in smoke." *Id.* at 19–20. The First Circuit took pains, however, to caution that the "prudent option" will "typically" be to decline jurisdiction. *Id.* at 20.

The First Circuit has recognized that, in many cases, there may be a challenging line-drawing exercise in determining just *how much* connection to a CBA will transmute a claim that has been denominated as a state-law matter into a federally preempted one:

> The line between consultation and interpretation has proven difficult to plot. *See* [*Livadas*, 512 U.S. at 124 n.18] (noting judicial confusion about scope of LMRA complete preemption); *Cavallaro*, 678 F.3d at 5 (remarking that Supreme Court "has never fully integrated" LMRA complete preemption cases into a unitary doctrine).

*Id.*

In this case, however, the issue is not so complicated. Because there is no longer a dispute about the amounts that Plaintiff was owed upon her resignation, there is no need to consider any fine-tuned distinction between "consultation" and "interpretation."[8] As the First Circuit has noted, "'when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted' does not trigger complete preemption." *Rueli*, 835 F.3d at 58 n.3 (alteration in original) (quoting *Livadas*, 512 U.S. at 124). A state law claim for failure to timely pay wages is not transmogrified into a federal question merely because relevant information such as the rate of pay is stated in a CBA. *See Livadas*, 512 U.S. at 124–25 ("[W]hen liability is governed by independent state law, the mere need to 'look

---

[8] It is often the case that employees' claims under the Wage Act will be preempted under § 301. But that is because such cases frequently involve—or appear likely to involve—interpretating a CBA to determine the amount of the unpaid wages that are owed. *See, e.g.*, *Lawless*, 894 F.3d at 19 ("Because the CBA addressed the plaintiff's rights to PTO and ESL, it was plausible at the time of removal that the district court would be required to interpret the CBA in order to determine what amounts, if any, were owed as lost wages."). *See also Rose*, 1 F.4th at 62 ("[A]ny claim that entails a court 'determining what (if anything) is owed' to an employee who is within a bargaining unit will almost always 'depend[] at least arguably on interpretations and applications of the CBA at issue.'" (second alteration in original) (quoting *Cavallaro*, 678 F.3d at 8)).

13

to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301.").

Because in this case Defendants' underpayment of Plaintiff is undisputed, determining the amount that Plaintiff should have been paid does not require interpretation of the CBA and thus does not provide grounds for § 301 preemption.

### 2. The CBA's Grievance and Arbitration Procedures Are Not Part of Plaintiff's Well-Pleaded Complaint

Defendants correctly note that the CBA contains a mandatory grievance and arbitration procedure. *See* Docket No. 11, at 8–9. Defendants initially argued that remanding this matter would improperly "allow [Plaintiff] to proceed in state court . . . 'without first exhausting the grievance procedures established in the bargaining agreement.'" *Id.* at 2 (quoting *Allis-Chalmers Corp.*, 471 U.S. at 219). (Defendants have not, however, requested that the Court compel arbitration.) In their supplemental briefing, Defendants press a slightly different branch of this argument centered on the CBA's arbitration clause. They argue that the question of whether to compel arbitration (or, indeed, whether Plaintiff's claim was forfeited by a failure to timely engage in the CBA's grievance procedures) will require interpretation of the CBA, and, therefore, supports preemption under § 301. *See* Docket No. 21, at 3–6.

In either form, Defendants' arguments are dispatched by the well-pleaded complaint rule. Plaintiff's complaint alleges only state law causes of action, and Plaintiff correctly points to the Supreme Court's opinion in *Caterpillar,* which holds that a federal question raised *solely as a defense* does not provide a basis for removal of state-law claims to federal court, even in the context of § 301 complete preemption:

> It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But *the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies*

14

> *embodied in the well-pleaded complaint rule*—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.

482 U.S. at 398–99 (emphasis added).

Directly to the point is the Supreme Court's further comment in *Caterpillar*, which underscores that a defendant cannot trigger federal preemption by injecting a CBA-based defense:

> [A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.

*Id.* at 399.

Seeking to avoid this plain statement of the law, Defendants invoke the First Circuit's decision in *Rose*. They note, in particular, the First Circuit's comment that "[the well-pleaded complaint] rule—like most general rules—admits of exceptions." *See* Docket No. 21, at 6. (quoting *Rose*, 1 F.4th at 60). The exception of which *Rose* speaks, however, is the doctrine of complete preemption which—in that case—"transmogrified Rose's state-law claims into federal claims" and thus allowed the removal of her suit to federal court, because the disputed issues were ones that would "substantially depend on construing the terms of the agreement (the CBA)." *Rose*, 1 F.4th at 60–61.

Nothing in *Rose* suggests that an exception to the well-pleaded complaint rule may be based on a *defense*. On the contrary, *Rose* is fully consistent with *Caterpillar*, which teaches that, in such cases, the well-pleaded complaint rule controls, such that remand to state court is required. *See Caterpillar*, 482 U.S. at 398–99. Thus, because they are raised solely as a defense, Defendants' contentions about whether Plaintiff should have exhausted the CBA's grievance and arbitration provisions cannot provide a basis for § 301 preemption.

CONCLUSION

Under the circumstances of this case, in which there is no dispute about the amount of PTO that was owed to Plaintiff at the time of her resignation, complete preemption doctrine cannot provide a basis for federal jurisdiction. Hewing to the well-pleaded complaint rule and seeing no basis for federal jurisdiction on the face of the complaint—even when it is construed with an eye to complete preemption doctrine under § 301 of the LMRA—it is evident that this Court lacks jurisdiction and must remand the matter to state court.

Accordingly, Plaintiff's motion to remand is ALLOWED.[9]

Dated: February 2, 2024

/s/ Paul G. Levenson
Paul G. Levenson
U.S. MAGISTRATE JUDGE

---

[9] The parties are advised that under Rule 72(a) of the Federal Rules of Civil Procedure and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party seeking review by a district judge of these determination(s) and order(s) must serve and file any objections within fourteen days of being served a copy of this order, unless a different time is prescribed by the magistrate judge or the district judge. *See* Fed. R. Civ. P. 72(a). Such objections must specifically designate the order, or part, to be modified or set aside and the basis for objection. The district judge will set aside any portion of the magistrate judge's order that is found to be clearly erroneous or contrary to law. The parties are further advised that failing to follow the objection procedures of Rule 2(b) may preclude further appellate review. *See Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999); *Sunview Condo. Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964–65 (1st Cir. 1997).